[915 NYS2d 521]

GoSmile, Inc., Appellant, v Jonathan B. Levine, D.D.S., Respondent.

First Department, December 21, 2010

### APPEARANCES OF COUNSEL

*Barack Ferrazzano Kirschbaum & Nagelberg LLP*, Chicago, Illinois (*Wendi E. Sloane, Heather J. Macklin* and *Sarah B. Waxman* of the bar of the State of Illinois, admitted pro hac vice, of counsel), and *Flemming Zulack Williamson Zauderer LLP*, New York City (*Jonathan D. Lupkin, Mark C. Zauderer* and *Kimberly A. Pallen* of counsel), for appellant.

*Davidoff Malito & Hutcher LLP*, New York City (*Joshua Krakowsky* and *Larry Hutcher* of counsel), and *Ressler & Ressler*, New York City (*Ellen Werther* of counsel), for respondent.

## OPINION OF THE COURT

Acosta, J.

In this appeal we are asked to consider whether a plaintiff is permitted to assert claims for both fraud and breach of contract where the fraud claim is based upon allegations that defendant induced plaintiff to enter into a contract based on a misrepresentation of present fact. We answer in the affirmative.

In 2002, defendant, and his wife (collectively, the Levines), founded plaintiff corporation, which develops and sells tooth-whitening and oral hygiene products, and were its sole stockholders, directors and employees. In December 2003, defendant sold a majority interest in the company to outside investors. In connection with the sale, on December 30, 2003, the Levines individually entered into confidentiality and noncompete agreements with plaintiff, which provided, among other things, that plaintiff was the exclusive owner of all information and material pertaining to the business, and that the Levines would not unnecessarily disclose such information or use it for their own benefit in any manner adverse to plaintiff's interests. After executing the agreements, the Levines remained at-will employees, directors and minority owners of plaintiff.

In March 2007, plaintiff encountered financial difficulties necessitating a cash infusion. The Levines disagreed with other large investors as to the best means of accomplishing this, and, as a result, their employment with plaintiff terminated in July 2007. They resigned from the board of directors the following month.

On February 19, 2008, the Levines commenced an action in New York County against plaintiff's controlling shareholder and director alleging that the controlling shareholder destroyed plaintiff's value and wrongfully terminated defendant. That action was withdrawn and the dispute resolved on April 21, 2008, whereby the Levines entered into a settlement agreement with plaintiff and several other parties, which contained a broad mutual release of all claims of all kinds, whether known or unknown, that the parties ever had or now had. Defendant warranted that he had not breached the 2003 confidentiality and noncompete agreements, and was not then in breach of those agreements. The settlement agreement also provided that plaintiff would buy all of the Levines' stock in plaintiff, and would pay severance to defendant, for which the Levines were paid a total of over $3.35 million.

On that same date, defendant entered into a consulting agreement with plaintiff, which provided, among other things, that

all information defendant received while employed by plaintiff would belong only to plaintiff, and that defendant would not divulge any confidential information and, upon termination, would return all property and information belonging to plaintiff. The consulting agreement also provided for defendant to receive monthly payments totaling $1 million over four years. Those payments were made through December 2008, at which time plaintiff allegedly learned that defendant had breached his obligations.

By amended complaint dated July 20, 2009, plaintiff, naming only defendant, alleged fraudulent inducement, based on defendant's representation in recital 7 of the settlement agreement that he had not breached any provision of the noncompete agreement (first cause of action); breach of contract, based on defendant's breach of the 2003 noncompete agreement (second cause of action); and, in the alternative, breach of contract, based on the settlement agreement (third cause of action) and the consulting agreement (fourth cause of action).* Plaintiff sought, among other things, damages and rescission of the settlement and consulting agreements.

Specifically, plaintiff alleged that defendant lied to plaintiff when he represented and warranted that he had never breached and was not currently in breach of the noncompete agreement entered into in 2003. Plaintiff also alleged that defendant made misstatements in order to induce plaintiff to settle certain disputes between them and enter into new agreements, the settlement agreement and mutual release of claims, and the consulting agreement, all of which were executed in 2008 (the 2008 agreements). Plaintiff further alleged that it relied to its detriment on defendant's misrepresentations.

On or about August 13, 2009, defendant moved to dismiss the first and second causes of action, for failure to state a claim, and for sanctions. The motion court granted the motion to the extent of dismissing plaintiff's fraudulent inducement claim on the ground that it was duplicative of plaintiff's claim that defendant breached the 2008 agreements. The motion court also dismissed plaintiff's claim for breach of the 2003 noncompete agreement, on the ground that even in the pre-answer stage in which the court must accept plaintiff's allegations as true and give plaintiff the benefit of every reasonable inference (*see gen-*

---

* On January 29, 2009, plaintiff filed suit in the United States District Court for the Southern District of New York. The District Court dismissed the action based on a forum selection clause.

*erally Bernstein v Kelso & Co.*, 231 AD2d 314 [1997]), plaintiff had no valid fraudulent inducement claim and was not entitled to rescission of the 2008 agreements. Specifically, the court concluded that since the 2008 agreements included mutual releases, plaintiff had released any claim under the 2003 noncompete agreement. We disagree.

To state a claim for fraudulent inducement, there must be a knowing misrepresentation of material present fact, which is intended to deceive another party and induce that party to act on it, resulting in injury (*Sokolow, Dunaud, Mercadier & Carreras v Lacher*, 299 AD2d 64, 70 [2002]). Generally, to recover damages for a tort, such as fraud, in a contract action, plaintiff needs to plead and prove "a breach of duty distinct from, or in addition to, the breach of contract" (*Non-Linear Trading Co. v Braddis Assoc.*, 243 AD2d 107, 118 [1998] [internal quotation marks omitted]).

This Court, as well as the Court of Appeals, has held that a misrepresentation of present fact, unlike a misrepresentation of future intent to perform under the contract, is collateral to the contract, even though it may have induced the plaintiff to sign it, and therefore involves a separate breach of duty (*Deerfield Communications Corp. v Chesebrough-Ponds, Inc.*, 68 NY2d 954, 956 [1986]; *see also First Bank of Ams. v Motor Car Funding*, 257 AD2d 287, 291-292 [1999] [concurrent causes of action for fraud and breach of contract may lie where plaintiff alleges it was induced to enter into a contract based on defendant's misrepresentation of material fact]).

In the instant matter, plaintiff alleged that defendant knowingly misrepresented that he did not breach the confidentiality and noncompete provisions of the 2003 agreement, which was not merely an insincere promise of future performance. It was instead a misrepresentation of then present fact that was collateral to the contract, and thus plaintiff sufficiently alleged a cause of action sounding in fraud (*see Graubard Mollen Dannett & Horowitz v Moskovitz*, 86 NY2d 112, 122 [1995] [cause of action for fraud may arise when one party misrepresents a material fact, knowing it is false, which the other party relies on to its detriment]). Plaintiff's claim for fraudulent inducement is not based on an allegation that defendant misrepresented his future intention to comply with the 2008 agreements. It was based, rather, on an allegation that defendant fraudulently induced plaintiff to enter into the 2008 agreements based on a misrepresentation of present fact, namely that at the time he

entered into the contract, plaintiff had not breached the 2003 noncompete agreement. Specifically, even after being paid over $3 million in severance, and agreeing to receive monthly payments totaling $1 million over a four-year period, defendant retained and used for his own benefit plaintiff's confidential financial documents and strategic business and marketing plans, and developed and marketed competitive teeth-whitening products through a competing venture. Plaintiff's fraudulent inducement claim is, therefore, separate from and may be maintained in addition to its breach of contract claim.

■ The motion court erroneously held that the breach of contract claims regarding the 2003 agreement were not viable since the settlement agreement contained a mutual release of all claims. Inasmuch as plaintiff has pleaded a fraudulent inducement claim, rescission of the 2008 agreements might result, at which time plaintiff's breach of contract claim based on the 2003 agreement might be valid (see ·Sokolow, 299 AD2d at 70-71 [rescission is a viable remedy where one party pleads that it was fraudulently induced to enter into a contract]). To be sure, if plaintiff is able to prevail on its fraudulent inducement claim and its request for rescission, the 2008 agreements (and the releases contained therein) may be rendered void, and the 2003 noncompete agreement breach claim revived. Clearly, plaintiff had reason to require a warranty from defendant that plaintiff's trade secrets were intact, and it is eminently plausible that plaintiff would not have paid millions of dollars to defendant had it known that defendant had by that time manufactured a competing product and solicited customers from plaintiff's clients and potential clients.

Defendant's reliance on *Centro Empresarial Cempresa S.A. v América Móvil, S.A.B. de C.V.* (76 AD3d 310 [2010]) is misplaced. In that action, the plaintiffs alleged that they were induced to sell their minority interest in a company based on misrepresentations made to them by the defendants concerning the value of the underlying venture. This Court held that the causes of action for fraud and breach of contract were barred by the general releases granted to the defendants. We specifically noted that the plaintiffs in *Centro* entered into the transaction fully aware that the defendants did not give them access to internal financial records, and that if the plaintiffs did not intend to release claims of fraud that they might discover in the future, they should have demanded access to the internal books and records. Moreover, the plaintiffs should have insisted that the

release be conditioned on the truth of the financial information provided by the defendants, and in failing to do so, the plaintiffs willingly assumed the business risk. In the instant case, plaintiff, as we suggested in *Centro,* did in fact request an express warranty from defendant as to the veracity of the information provided. The general release unequivocally stated that it did not extend to claims which "[plaintiff] does not know or suspect to exist in his favor at the time of executing the release."

Finally, the dissent's concerns that our holding could be cited for the proposition that a breach of a written warranty, without additional facts, would give rise to an independent tort cause of action is unfounded. There are many "additional" facts in this particular case, as well as the written warranty, and our holding based on the facts in this particular action is amply supported by this Court's and Court of Appeals precedent.

Accordingly, the order of the Supreme Court, New York County (Charles E. Ramos, J.), entered November 4, 2009, which granted defendant's motion to dismiss the first and second causes of action (denominated counts I and II) in the amended complaint, should be reversed, on the law, with costs, and those causes of action reinstated. The appeal from the order of the same court and Justice, entered August 10, 2009, which also addressed the second cause of action, should be dismissed, without costs, as academic.

NARDELLI, J. (dissenting in part). I agree with the majority that the second cause of action should be reinstated because the motion court's predicate for dismissing it, i.e., that the 2008 settlement agreement could not be rescinded, and thus, as a result of the contractual language contained within it, rendered the 2003 noncompete agreement academic, was faulty.

As the majority notes, the 2008 settlement agreement can be rescinded if plaintiff can prove that defendant's representation that he had not breached the noncompete agreement is established to be false. The elements of a claim for rescission based upon fraudulent inducement are that there must be a knowing misrepresentation of present material fact which is intended to deceive another party and which induces the other party to act upon the misrepresentation with resultant damage (*Sokolow, Dunaud, Mercadier & Carreras v Lacher,* 299 AD2d 64, 70 [2002]). These elements are sufficiently pleaded. If the settlement agreement is rescinded, the noncompete agreement would be revived.

Where I part company with the majority is its determination that the first cause of action for fraudulent inducement based

upon a written representation within the settlement agreement is not duplicative of the third cause of action for breach of contract. "It is a well-established principle that a simple breach of contract is not to be considered a tort unless a legal duty independent of the contract itself has been violated" (*Clark-Fitzpatrick, Inc. v Long Is. R.R. Co.*, 70 NY2d 382, 389 [1987]). "This legal duty must spring from circumstances extraneous to, and not constituting elements of, the contract, although it may be connected with and dependent upon the contract" (*id.*). Here, the representation concerning compliance with the prior noncompete agreement was contained within the settlement agreement, with the result that any resultant damages did not flow from a noncontractual duty extraneous to the contract, but rather from a breach of the contract itself.

The majority's blithe characterization of this dissent as unwarranted because of the existence of "additional" facts (not given) as well as the existence of ample legal precedent (also not given) is, at a minimum, mystifying. This totally conclusory response ignores that in the first cause of action in the complaint, the only fact upon which plaintiff relies is "Dr. Levine's representation and warranty in Recital 7 of the settlement agreement." There are no other facts or, more importantly, no other allegations of any other misrepresentation.

To suggest that there are other misrepresentations means that the majority is conjuring up facts not alleged by plaintiff in its complaint, and even now not revealed in the majority opinion. This concealment is an invitation to jurisprudential mayhem. It is not the province of any court, let alone an appellate court, to create facts for a party.

Nevertheless, although the tort claim for fraudulent inducement should not be reinstated, this does not mean that the prayer for rescission cannot be entertained. I would nostra sponte grant plaintiff leave to amend its third cause of action for breach of contract to also assert a request for rescission, along with its claim for damages. Although such a result might appear to be a matter of semantics, it would prevent this case from being cited in the future for the proposition that a breach of a written warranty also, without any additional facts, gives rise to an independent tort cause of action.

Tom, J.P., Andrias and DeGrasse, JJ., concur with Acosta, J.; Nardelli, J., dissents in part in a separate opinion.

Order, Supreme Court, New York County, entered November 4, 2009, reversed, on the law, with costs, and those causes of ac-

tion reinstated. Appeal from order, same court, entered August 10, 2009, dismissed, without costs, as academic.