[928 NYS2d 229]

MBIA Insurance Corporation, Respondent-Appellant, v Countrywide Home Loans, Inc., et al., Appellants-Respondents, et al., Defendant.

First Department, June 30, 2011

288

APPEARANCES OF COUNSEL

*Goodwin Procter LLP*, New York City (*Mark Holland, Christopher J. Garvey, Abigail K. Hemani, Ashley H. Gray, Paul F. Ware, Jr.*, and *Sarah Heaton Concannon* of counsel), for appellants-respondents.

*Quinn Emanuel Urquhart & Sullivan LLP*, New York City (*Philippe Z. Selendy, Peter E. Calamari, Sanford I. Weisburst, Manisha M. Sheth* and *Eve S. Moskowitz* of counsel), for respondent-appellant.

OPINION OF THE COURT

RICHTER, J.

Plaintiff MBIA Insurance Corporation (MBIA) is in the business of providing financial guarantee insurance and other forms of credit protection on financial obligations. Defendant Countrywide Financial Corporation (Countrywide Financial), itself or through its subsidiaries, is engaged in mortgage lending and other real estate finance related businesses, including mortgage banking, securities dealing and insurance underwriting. Defendant Countrywide Home Loans, Inc. (Countrywide Home) originates residential home mortgage loans and, together with defendant Countrywide Home Loans Servicing LP (Countrywide Servicing), services those loans. Defendant Countrywide Securities Corporation (Countrywide Securities), a registered broker-dealer, underwrites offerings of mortgage-backed securities.[1]

In this action, MBIA alleges that the Countrywide defendants (collectively Countrywide) committed fraud and breached certain contracts in connection with the securitization of pools of residential mortgages.[2] Securitization involves packaging numerous mortgage loans into a trust, issuing debt securities in the trust and selling those notes, known as residential mortgage-backed securities, to investors. The securities are backed by the mortgages, and the borrowers' payments of principal and interest on their mortgage loans are used to pay the investors who purchased the securities.

According to the amended complaint, Countrywide Home originated or acquired residential mortgages, selected certain of

---

1. Countrywide Home, Countrywide Servicing and Countrywide Securities are all wholly-owned subsidiaries of Countrywide Financial. After the events set forth in the amended complaint, defendant Bank of America merged with Countrywide Financial and acquired these subsidiaries. Bank of America is not a party to this appeal.

2. The facts set forth here are from the amended complaint which, unless contradicted by documentary evidence, must be accepted as true for purposes of this CPLR 3211 motion.

those loans for securitization and transferred them into Countrywide-created trusts that issued the notes. Either Countrywide Home or Countrywide Servicing acted as the servicer for the mortgage loans. Countrywide Securities underwrote the securitizations and sold the securities to investors.

In order to make the securities more marketable, Countrywide engaged MBIA to provide financial guarantee insurance. Between 2002 and 2007, MBIA entered into 17 insurance contracts with Countrywide Home and Countrywide Servicing relating to 17 of Countrywide's securitizations; 15 of these, spanning from 2004 through 2007, are at issue in this action. Each securitization generally comprised one or two pools of mortgage loans consisting of between approximately 8,000 and 48,000 loans. All of the loans in the securitizations were either home equity lines of credit (HELOCs) or closed-end second mortgages (CESs).[3]

Pursuant to the insurance contracts, MBIA guaranteed the payments of interest and principal to the investors. Because the trusts' obligations were backed by MBIA, in its capacity as insurer, any shortfalls in trust payments to the investors would be covered by MBIA. According to the amended complaint, MBIA's guarantee allowed Countrywide to market the securities based on a AAA credit rating, rather than the lower credit rating the notes would otherwise have obtained.

In the late fall of 2007, there was a material increase in delinquencies, defaults and subsequent charge-offs of the loans underlying the securitizations. As a result, the trusts were unable to meet their payment obligations to the investors who held the securities and MBIA was forced to pay out on its insurance policies. As of August 29, 2009, MBIA had paid $1.4 billion on its guarantees and faces future claims in excess of hundreds of millions of dollars more.

MBIA commenced this action alleging that the various Countrywide entities made material misrepresentations and breached warranties concerning the origination and quality of the mortgage loans underlying the securitizations. MBIA alleges that Countrywide falsely represented that the loans were made

---

3. With a HELOC, the equity in the property collateralizes a specified line of credit that may be drawn down by the borrower. A CES is also collateralized by the borrower's equity, but the loan is of a fixed amount. Both HELOCs and CESs are second liens on residential property and are junior in priority to the first-lien mortgage. Thus, if the property is foreclosed, the proceeds must be used to fully satisfy the first lien before the second lien is paid. Accordingly, both HELOCs and CESs present more risk than a first-lien mortgage.

in strict compliance with its underwriting standards and guidelines, as well as industry standards. In fact, MBIA claims, Countrywide abandoned those guidelines by knowingly lending to borrowers who could not afford to repay the loans, or who committed fraud in loan applications or whose applications could not satisfy basic criteria for responsible lending.

For each securitization, Countrywide Home solicited bids from MBIA and provided it with "loan tapes"—key statistics about each underlying loan in the pool—that purportedly contained materially false information indicating that the borrowers were more creditworthy than they actually were.[4] In addition, Countrywide is alleged to have falsely represented that appraisals of residential properties were conducted by independent third-party appraisers. In fact, MBIA alleges, the appraisers were not independent but rather were affiliated with Countrywide, which led to a conflict of interest and increased the risk of inflated appraisals. In addition, Countrywide Securities gave MBIA prospectuses for the securities MBIA was going to insure. MBIA alleges that these documents too contained false representations.

Countrywide also provided MBIA with "shadow ratings" on the proposed pools of mortgage loans selected for the securitizations. A shadow rating, issued by a credit rating agency based on information provided by Countrywide as to the credit quality of the mortgage loans, represents the rating the securitization would have had without MBIA's financial guarantee. All of the securitizations had shadow ratings of at least BBB- or the equivalent. MBIA contends that in the absence of credit quality reflected by a shadow rating of at least BBB-, it would not have agreed to provide the financial guarantees. MBIA alleges that the shadow ratings were false, misleading or inflated.

According to the amended complaint, as a result of Countrywide's alleged misconduct and fraudulent misrepresentations concerning the quality of the loans underlying the securitizations, thousands of mortgage loans went into default and MBIA was forced to pay out on its guarantees. MBIA contends that if it had known that Countrywide's representations about the loans were false, MBIA would never have guaranteed the notes and suffered the losses alleged.

---

4. The loan tapes generally included information such as the loan-to-value ratio for each loan, the debt-to-income ratio for each borrower, and the borrower's FICO score, which measured the borrower's creditworthiness.

■ In its amended complaint, MBIA asserts causes of action against the various Countrywide entities for, inter alia, fraud, negligent misrepresentation and breach of the implied duty of good faith and fair dealing.[5] Countrywide moved to dismiss these claims pursuant to CPLR 3211 (a) (1) and (7), and in a decision entered April 29, 2010, the motion court dismissed the negligent misrepresentation cause of action, but declined to dismiss the fraud cause of action. With respect to the breach of the implied duty of good faith and fair dealing cause of action, the court dismissed the claim except for MBIA's allegation that Countrywide deliberately refused to take corrective action on defaulting loans so that it could collect more fees. Both plaintiff and Countrywide now appeal.

■ The motion court properly concluded that the fraud cause of action is not duplicative of the contract claim alleging breaches of certain representations and warranties. In order to establish fraud, a plaintiff must show a material misrepresentation of an existing fact, made with knowledge of its falsity, an intent to induce reliance thereon, justifiable reliance upon the misrepresentation, and damages (*Eurycleia Partners, LP v Seward & Kissel, LLP*, 12 NY3d 553, 559 [2009]). General allegations that a defendant entered into a contract with the intent not to perform are insufficient to support a fraud claim (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 318 [1995]; *Univec, Inc. v American Home Prods. Corp.*, 265 AD2d 403, 403 [1999]).

A fraud claim will be upheld when a plaintiff alleges that it was induced to enter into a transaction because a defendant misrepresented material facts, even though the same circumstances also give rise to the plaintiff's breach of contract claim (*First Bank of Ams. v Motor Car Funding*, 257 AD2d 287, 291-292 [1999]). "Unlike a misrepresentation of future intent to perform, a misrepresentation of present facts is collateral to the contract . . . and therefore involves a separate breach of duty" (*id.* at 292; *see also Deerfield Communications Corp. v Chesebrough-Ponds, Inc.*, 68 NY2d 954, 956 [1986]; *GoSmile, Inc. v Levine*, 81 AD3d 77, 81 [2010]; *Selinger Enters., Inc. v Cassuto*, 50 AD3d 766, 768 [2008]; *WIT Holding Corp. v Klein*, 282 AD2d 527, 528 [2001]).

---

5. Since MBIA's original complaint was superseded by the amended complaint, we dismiss as moot the appeal and cross appeal from the motion court's July 13, 2009 order addressed to the original complaint (2009 NY Slip Op 31527[U]).

We find that MBIA has sufficiently pleaded a fraud independent of the contract claim. The amended complaint alleges that: (i) for each securitization, Countrywide Home provided MBIA with loan documentation, including requests for bids, loan tapes and underlying transaction documents; (ii) representations made in this documentation, such as the loan-to-value ratio, the debt-to-income ratio and the borrower's FICO score, were false and misleading; (iii) for each securitization, Countrywide Securities provided MBIA with prospectuses; (iv) these prospectuses contained false representations about Countrywide's compliance with its underwriting guidelines, the independence of the third-party appraisers, and Countrywide's knowledge of facts that would have caused a reasonable originator to conclude that a borrower would not be able to repay the loan; (v) Countrywide provided MBIA with false, misleading or inflated "shadow ratings" for the loans selected for securitization; (vi) Countrywide made regular presentations to MBIA falsely representing its risk-management systems and loan origination practices; and (vii) all of these representations were made with knowledge of their falsity and to induce MBIA to enter into the insurance agreements. MBIA further alleges that Countrywide Financial directed the activities of Countrywide Home and Countrywide Securities.

Because MBIA alleges misrepresentations of present facts, and not future intent, made with the intent to induce MBIA to insure the securitizations, the fraud claim survives (*see First Bank*, 257 AD2d at 292 ["defendants intentionally misrepresented material facts about various individual loans so that they would appear to satisfy (the) warranties" in the parties' agreements]). It is of no consequence that some of the allegedly false representations are also contained in the agreements as warranties and form a basis of the breach of contract claim (*see id.* ["a fraud claim can be based on a breach of contractual warranties notwithstanding the existence of a breach of contract claim"]; *Jo Ann Homes at Bellmore v Dworetz*, 25 NY2d 112, 119-121 [1969] [allowing fraud claim to proceed in tandem with a contract claim, where the seller misrepresented facts as to the present condition of his property, even though these facts were warranted in the parties' contract]). "It simply cannot be the case that any statement, no matter how false or fraudulent or pivotal, may be absolved of its tortious impact simply by incorporating it verbatim into the language of a contract" (*In re CINAR Corp. Sec. Litig.*, 186 F Supp 2d 279, 303 [ED NY 2002]).

■ There is no merit to Countrywide's claim that the fraud cause of action fails to satisfy the particularity pleading requirements of CPLR 3016 (b). Although CPLR 3016 (b) requires a plaintiff to detail the allegedly fraudulent conduct, "that requirement should not be confused with unassailable proof of fraud" (*Pludeman v Northern Leasing Sys., Inc.*, 10 NY3d 486, 492 [2008]). The amended complaint sufficiently identifies Countrywide's misrepresentations and describes when and how they were made to MBIA, including through false and misleading loan tapes and prospectuses. The fraud claim also lists 4,689 loans that allegedly failed to comply with Countrywide's underwriting guidelines, specifies that the defective loans had debt-to-income ratios or combined loan-to-value ratios exceeding maximum guideline levels and alleges that the loans were approved on the basis of unverified borrower-stated income that was patently unreasonable. These allegations are "sufficient to permit a reasonable inference of the alleged conduct" (*id.* at 492). Furthermore, the amended complaint sufficiently identifies Countrywide Securities and Countrywide Financial's roles in the alleged fraud.

■ We reject Countrywide's contention that the fraud claim should have been dismissed for failure to plead a causal link between Countrywide's alleged conduct and MBIA's damages. To demonstrate fraud, a plaintiff must show, inter alia, that a defendant's misrepresentations were the direct and proximate cause of the claimed losses (*Laub v Faessel*, 297 AD2d 28, 30 [2002]). "A fraudulent misrepresentation is a legal cause of a pecuniary loss resulting from action or inaction in reliance upon it if, but only if, the loss might reasonably be expected to result from the reliance" (*Stutman v Chemical Bank*, 95 NY2d 24, 30 [2000], quoting Restatement [Second] of Torts § 548A).

The amended complaint alleges that (i) Countrywide knowingly loaned to borrowers who could not afford to repay their loans, who committed fraud in loan applications, or who otherwise did not satisfy the basic risk criteria for prudent and responsible lending that Countrywide claimed to use; (ii) Countrywide falsely represented to MBIA that the loans were made in strict compliance with its underwriting standards and guidelines, and made numerous other misrepresentations about the quality of the loans; (iii) the number of delinquencies and defaults was extremely high because the loans materially failed to comply with Countrywide's underwriting guidelines; (iv) a review conducted by MBIA revealed that 91% of the defaulted

or delinquent loans showed material discrepancies from underwriting guidelines; and (v) as a result of the defaults, MBIA has been forced to make billions of dollars in claims payments on the insurance agreements.

These allegations are sufficient to show loss causation since it was foreseeable that MBIA would suffer losses as a result of relying on Countrywide's alleged misrepresentations about the mortgage loans (see *Silver Oak Capital L.L.C. v UBS AG*, 82 AD3d 666, 667 [2011] [loss causation sufficiently alleged "since it was foreseeable that (the plaintiffs) would sustain a pecuniary loss as a result of relying on (the defendant's) alleged misrepresentations"]; *Teamsters Local 445 Frgt. Div. Pension Fund v Bombardier, Inc.*, 2005 WL 2148919, *12, 2005 US Dist LEXIS 19506, *57-58 [SD NY 2005]; see also *Hotaling v Leach & Co.*, 247 NY 84, 93 [1928] ["The loss sustained is directly traceable to the original misrepresentation of the character of the investment the plaintiff was induced to make"]). It cannot be said, on this pre-answer motion to dismiss, that MBIA's losses were caused, as a matter of law, by the 2007 housing and credit crisis (see *In re Countrywide Fin. Corp. Sec. Litig.*, 588 F Supp 2d 1132, 1174 [CD Cal 2008] [it is the job of the factfinder to determine which losses were proximately caused by misrepresentations and which were due to extrinsic forces]).

■ The motion court properly dismissed the negligent misrepresentation cause of action. A claim for negligent misrepresentation requires a showing of a special relationship of trust or confidence between the parties which creates a duty for one party to impart correct information to another (*OP Solutions, Inc. v Crowell & Moring, LLP*, 72 AD3d 622 [2010]; *Hudson Riv. Club v Consolidated Edison Co. of N.Y.*, 275 AD2d 218, 220 [2000]). Generally, a special relationship does not arise out of an ordinary arm's length business transaction between two parties (*Aerolineas Galapagos, S.A. v Sundowner Alexandria, LLC*, 74 AD3d 652, 653 [2010]; *ESE Funding SPC Ltd. v Morgan Stanley*, 68 AD3d 676, 677 [2009]).

The allegations in the amended complaint are insufficient to show that MBIA and Countrywide shared the type of business relationship that would give rise to a duty on the part of Countrywide to impart correct information. The transactions in question were conducted by two sophisticated commercial entities: MBIA, a long-established insurance company experienced in writing financial guarantee policies, and Countrywide, then an industry leader in the residential mortgage industry. MBIA's

claim of a long-standing relationship between the parties is belied by the allegations in the amended complaint that MBIA insured only two Countrywide securitizations in a short period prior to the transactions in question. MBIA and Countrywide's limited prior dealings do not elevate this arm's length transaction into a relationship of trust or confidence.

The claim that Countrywide had superior knowledge of the particulars of its own business practices is insufficient to sustain the cause of action (*see Sebastian Holdings, Inc. v Deutsche Bank AG.*, 78 AD3d 446, 447 [2010] ["Plaintiff's alleged reliance on defendant's superior knowledge and expertise in connection with its foreign exchange trading account ignores the reality that the parties engaged in arm's-length transactions pursuant to contracts between sophisticated business entities that do not give rise to fiduciary duties"]). Because MBIA has failed to allege facts showing that these sophisticated commercial entities engaged in anything more than an arm's length business transaction, the negligent misrepresentation claim was properly dismissed.

The motion court should have dismissed in its entirety the cause of action for breach of the implied duty of good faith and fair dealing. Both the claim as pleaded in the amended complaint and the claim as upheld by the motion court are duplicative of the breach of contract claims because they arise from the same facts (*see Logan Advisors, LLC v Patriarch Partners, LLC*, 63 AD3d 440, 443 [2009]). MBIA's newly-crafted claim on appeal fares no better. The allegation that Countrywide exercised its discretion in bad faith merely restates the contract-based claims that Countrywide failed to abide by industry standards.

Accordingly, the order of the Supreme Court, New York County (Eileen Bransten, J.), entered April 29, 2010, which, to the extent appealed from, as limited by the briefs, granted the Countrywide defendants' CPLR 3211 motion to dismiss the amended complaint to the extent of dismissing the negligent misrepresentation claim and narrowing the claim for breach of the implied duty of good faith and fair dealing, and denied said defendants' motion to dismiss the fraud claim, should be modified, on the law, to dismiss the implied duty claim in its entirety, and otherwise affirmed, without costs. The appeals from the order, same court and Justice, entered July 13, 2009, which granted in part and denied in part the Countrywide defendants' motion to dismiss the original complaint, should be dismissed, without costs, as moot.

Mazzarelli, J.P., Saxe, Renwick and DeGrasse, JJ., concur.

Order, Supreme Court, New York County, entered April 29, 2010, modified, on the law, to dismiss the implied duty claim in its entirety, and otherwise affirmed, without costs. Appeal and cross appeal from order, same court, entered July 13, 2009, dismissed, without costs, as moot.