Avnet, Inc. v Deloitte Consulting LLP (2020 NY Slip Op 05445)





Avnet, Inc. v Deloitte Consulting LLP


2020 NY Slip Op 05445


Decided on October 06, 2020


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided and Entered: October 06, 2020

Before: Friedman, J.P., Webber, Kern, Moulton, JJ. 


Index No. 653146/19 Appeal No. 11948 Case No. 2019-04851 

[*1]Avnet, Inc., Plaintiff-Appellant,
v
Deloitte Consulting LLP, Defendant-Respondent.


Kasowitz Benson Torres LLP, New York (Mark P. Ressler of counsel) for appellant.
Kirkland & Ellis LLP, New York (Matthew Solum of counsel), for respondent.



Order, Supreme Court, New York County (Jennifer G. Schechter, J.), entered October 11, 2019, which, to the extent appealed from as limited by the briefs, granted defendant's motion to dismiss the first through fifth, seventh through ninth, and eleventh causes of action pursuant to CPLR 3211, unanimously modified, on the law, to deny the motion as to the seventh cause of action (post-August 1, 2016 fraud) and so much of the ninth cause of action as alleges fraudulent inducement of Work Order No. 3 and Project Change Request EMA-003-01, and otherwise affirmed, without costs.
The court correctly dismissed the first through fifth causes of action (pre-August 2, 2016 claims) based on the release. It also properly dismissed so much of the ninth cause of action as alleges fraudulent inducement of the release. "[A] party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release" (Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 17 NY3d 269, 276 [2011]).
As the motion court found, plaintiff's contention that it did not release a fraud claim is baseless. Plaintiff released defendant from "any and all claims . . ., whether known or unknown, that are based upon, relate directly or indirectly to, or arise from or in connection with Project Evolve [a software system designed by defendant] . . . from the beginning of time through" August 1, 2016, excepting only claims for breach of the Settlement Agreement. This language is broad enough to encompass a claim that defendant fraudulently induced plaintiff to enter into the work orders for Project Evolve (see Kafa Invs., LLC v 2170-2178 Broadway LLC, 114 AD3d 433 [1st Dept 2014], lv denied 24 NY3d 902 [2014]).
Contrary to plaintiff's claim, the scope of a release is not always an issue of fact. For example, in Centro, the Court of Appeals affirmed our CPLR 3211 dismissal of claims — including a fraud claim — due to a release (see 17 NY3d at 274-277).
Plaintiff did not allege a separate fraud from the subject of the release (see Centro Empresarial Cempresa S.A. v AmÉrica MÓvil, S.A.B. de C.V., 76 AD3d 310, 318 [1st Dept 2010], affd 17 NY3d 269 [2011]).
Even if plaintiff had alleged a separate fraud, its claim that it was fraudulently induced to sign the release would still fail for lack of justifiable reliance (see e.g. Centro, 17 NY3d at 278). The Settlement Agreement does not merely contain a general merger clause ("This Agreement constitutes the entire understanding of the Parties . . . with respect to the subject matter hereof"); it also says, "The Parties represent . . . that in executing this Agreement they did not rely . . . upon any representation or statement, whether oral or written, made by the other Party . . . with regard to the subject matter, basis or effect of this Agreement or otherwise." The latter sentence forecloses plaintiff's reliance on defendant's oral statements (see e.g. WT Holdings Inc. v Argonaut Group, Inc., 127 AD3d 544 [1st Dept 2015]; Plaza PH2001, LLC v Plaza Residential Owners LP, 79 AD3d 587 [1st Dept 2010]).
Plaintiff's post-August 1, 2016 claims are, of course, not barred by the release. Its post-release fraud claims are not duplicative of its post-release contract claim (see e.g. Wyle Inc. v ITT Corp., 130 AD3d 438 [1st Dept 2015]). The essence of the contract claim is that defendant failed to fix Evolve. The essence of the fraud claims is that defendant misrepresented that Evolve was fundamentally sound; if plaintiff had known that Evolve was unfixable, it would have fired defendant sooner and would not have entered into Work Order No. 3 and Project Change Request EMA-003-01.
The Master Service Agreement (MSA) that governs the work orders limits plaintiff's damages to the fees it has paid defendant, unless defendant acted in bad faith or committed intentional misconduct. Because this limitation might be upheld, one cannot say, "as a matter of law, that the damages sought in connection with the fraud claim are the same as those sought in connection with the contract claims" (Ambac Assur. Corp. v Countrywide Home Loans Inc., 179 AD3d 518, 519 [1st Dept 2020]).
Plaintiff pled its fraud claims with sufficient particularity (see e.g. Pludeman v Northern Leasing Sys., Inc., 10 NY3d 486, 491 [2008]).
Defendant contends that plaintiff cannot establish the reliance necessary for its fraud claims because it failed to conduct an investigation. However, "the question of what constitutes reasonable reliance is not generally a question to be resolved as a matter of law on a motion to dismiss" (ACA Fin. Guar. Corp. v Goldman, Sachs & Co., 25 NY3d 1043, 1045 [2015]).
The constructive fraud claim was correctly dismissed because the MSA expressly disclaims any fiduciary relationship between the parties, each of which is a sophisticated corporate entity. The existence of a fiduciary or confidential relationship is also negated by the fact that, by the time the constructive fraud claim allegedly arose, the parties had assumed an adversarial posture toward each other, making it necessary for them to enter into a settlement agreement to continue their business relationship (see Aoki v Aoki, 27 NY3d 32, 39-40 [2016]; INTL FCStone Mkts, LLC v Corrib Oil Co., 172 AD3d 492 [1st Dept 2019]; AQ Asset Mgmt. LLC v Levine, 154 AD3d 430, 431 [1st Dept 2017]).
The court properly dismissed the eleventh cause of action, for professional negligence under Arizona law. The MSA says, "This Agreement and each Work Order, and all matters relating to this Agreement and each Work Order, shall be governed by the laws of the State of New York (without giving effect to the choice of law principles thereof)" (emphasis added). The italicized language is broad enough to encompass plaintiff's claim that defendant negligently performed the services it was supposed to provide under the work orders (see e.g. Capital Z Fin. Servs. Fund II, L.P. v Health Net, Inc., 43 AD3d 100, 109 [1st Dept 2007] [citing Turtur v Rothschild Registry Intl., Inc., 26 F3d 304 [2d Cir 1994]). 
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: October 6, 2020