OPINION OF THE COURT
Memorandum.
The order of the Appellate Division should be affirmed, with costs.
*710 As of August 15, 1980 plaintiff, Allen & Company, owned approximately 300,000 common shares of Pancontinental Mining Limited, an Australian company. The shares were held on Allen’s behalf by defendant, Shearson Loeb Rhoades, Inc., in a foreign depository account in the name of ANZ Nominees, in Australia. By letter dated August 15, 1980, ANZ informed Shearson that Pancontinental was offering its shareholders as of that date shares and options in Pancontinental Petroleum Limited. The offering was not registered with the Securities and Exchange Commission. ANZ’s letter bore the stamped legend, "urgent, this is an important letter which requires your prompt attention,” and concluded: "Instructions must be in our hands by 4th September, 1980, at the latest. In the absence of your specific instructions reaching this office by that date, we will lapse your entitlements.”
Shearson did not, however, forward this letter to Allen. According to Allen, a Shearson broker first mentioned the offer offhandedly and without full particulars in a telephone conversation just before the offer expired, adding that Allen as an American citizen could not subscribe. By the time Allen received more information, consulted an attorney and informed Shearson that it wanted to subscribe, the offer had expired.
Allen sued for damages, but on Shearson’s demand the matter was submitted to arbitration. Shearson’s defense in the arbitration centered on two law issues. First, Shearson contended it could not legally have transmitted the letter or its contents to Allen because the offering was unregistered and that, had it done so, it would have violated section 5 (c) of the Securities Act of 1933 (15 USC § 77e [c]), which makes it unlawful for any person directly or indirectly to offer to sell any unregistered security. In the alternative, Shearson claimed that even had Allen timely received the letter, it could not legally have exercised its right to buy unregistered securities in the United States, and thus suffered no harm. The arbitrators awarded Allen damages and Shearson moved, pursuant to CPLR 7511 (b) and the Federal Arbitration Act (9 USC § 10), to set aside the award on the grounds that it was contrary to public policy as set forth in the Federal securities laws and irrational. Shearson’s motion was granted by Special Term but the Appellate Division reversed and reinstated the award.
Shearson’s position on the present motion, at bottom, rests on the very same two law issues it unsuccessfully tendered to *711 the arbitrators — that it could not legally have transmitted the offer, and that Allen could not legally have accepted it; therefore, according to Shearson, an award of damages based on such illegal conduct cannot stand. But even assuming that an arbitration award were subject to vacatur on the ground that the arbitrators erroneously decided the questions of law submitted by the parties (see, Matter of Maye [Bluestein] 40 NY2d 113, 118), and even assuming that an arbitration award under the Federal Arbitration Act could be vacated on grounds other than those specified by statute (9 USC §§ 2, 10 [a]-[d]), Shearson’s own admissions in the arbitration contradict its assertions on this motion that any communication or acceptance of the offer would have been illegal.
Whether or not Shearson’s transmittal of the August 15, 1980 letter to its customer would have constituted an offer to sell securities in violation of section 5 (c) of the Securities Act of 1933, Shearson’s own general counsel, testifying in the arbitration, acknowledged that a broker "can always legally speak to someone about an offering.” He testified that Shear-son did not consider an oral communication regarding an offering a violation of section 5 (c), and that Shearson had no policy barring its brokers from orally informing customers of such offerings. Indeed, Shearson offered testimony that its agent had in fact orally communicated the substance of Pan-continental’s offer shortly after its receipt, which conflicted with Allen’s proof that the communication was incomplete and untimely. Similarly, Shearson’s own witness and correspondence indicated that Allen could have made arrangements to subscribe to the rights, thus contradicting the contention that Allen suffered no damage because it could not lawfully have accepted the offer.
Chief Judge Wachtler and Judges Meyer, Simons, Kaye, Alexander and Titone concur; Judge Hancock, Jr., taking no part.
Order affirmed, with costs, in a memorandum.