[659 NYS2d 276]

RICHARD A. BERNSTEIN, on Behalf of Himself and All Others Similarly Situated, Appellant, v KELSO & COMPANY, INC., et al., Respondents.

First Department, July 1, 1997

**APPEARANCES OF COUNSEL**

*Leon P. Gold* of counsel, New York City (*Herman L. Goldsmith* and *Amy H. Held* on the brief; *Proskauer Rose Goetz & Mendelsohn, L. L. P.,* attorneys), for appellant.

*Robert E. Zimet* of counsel, New York City (*Susan L. Saltzstein, Jonathan R. Goldblatt* and *Helen L. Monaco* on the brief; *Skadden, Arps, Slate, Meagher & Flom, L. L. P.,* attorneys), for Kelso & Company, Inc. and others, respondents.

*Michael S. Feldberg* of counsel, New York City (*Alan R. Glickman* and *Linda R. Daly* on the brief; *Schulte Roth & Zabel, L. L. P.,* attorneys), for Steven B. Nielsen and others, respondents.

**OPINION OF THE COURT**

NARDELLI, J.

Almost 70 years ago, Chief Judge Cardozo of the Court of Appeals set forth a fiduciary standard in words that have resounded down through the decades: "Many forms of conduct

*permissible* in a workaday world for those acting at arm's length, are forbidden to those bound by fiduciary ties. A trustee is held to something stricter than the morals of the market place. Not honesty alone, but the punctilio of an honor the most sensitive, is then the standard of behavior. As to this there has developed a tradition that is unbending and inveterate." (*Meinhard v Salmon*, 249 NY 458, 464.)

As a Court of law *and* equity, we can do no less than adhere to the unbending tradition upholding this standard of behavior.

Our role in a motion to dismiss pursuant to CPLR 3211 (a) (7) is limited to determining whether the complaint states a cause of action, not whether there is evidentiary support for the complaint (*LoPinto v J. W. Mays, Inc.*, 170 AD2d 582, 583). We must liberally construe the complaint in favor of the plaintiff and accept as true all factual allegations (*supra*).

Applying these principles to the complaint before us, the allegations of plaintiff present a picture of the management employees of a corporation scheming with a potential buyer to sell the corporation at the lowest possible price the principal and other shareholders would accept. It is asserted that the management employees dealt secretly with the buyer, furnishing it confidential information to aid it in making the most favorable offer (for the buyer) in the transaction.

Plaintiff owned shares of Rabco Health Services, Inc. as of August 31, 1993, and instituted this action on behalf of himself and others similarly situated for damages caused by the defendants' purported fraud and breach of fiduciary duty in connection with the acquisition of General Medical Corp. through a purchase of the plaintiff's stock in Rabco, which was the parent corporation of General Medical. In 1993, General Medical was a privately held corporation engaged in the nationwide distribution of medical and surgical supplies. The plaintiff was the Chairman and President of Rabco and was also the Chairman and controlling shareholder of General Medical. The complaint alleges that in order to induce loyalty and provide incentives, Rabco sold General Medical's stock at a nominal price to certain members of its management, including the defendants Nielsen, Robison, Garber and Nedrow. The stock was restricted pursuant to a shareholders' agreement which, absent a public offering or sale of all shares of Rabco, precluded the management defendants from selling their stock to anyone but Rabco for adjusted shareholders' equity. The *management defendants* also signed voting agreements giving the plaintiff the sole power to direct the voting of their com-

mon stock. However, the complaint alleges that in March of 1993 the management defendants secretly conspired with the defendant Kelso & Company, a leveraged buyout firm that raises capital from investors and purchases operating companies, and one of Kelso's principals, the defendant Goldberg, to orchestrate a buyout of the plaintiff and the other shareholders' interests in Rabco, and consequently, General Medical, at an unfairly low price. As alleged by plaintiff, the management defendants did so because, in light of the shareholder restrictions, they could only realize the full potential value of their stock if Rabco were sold or taken public, thereby creating a market for the shares. Thus, it is alleged that the management defendants, unknown to plaintiff, consulted with an attorney to explore ways to sell their stock in General Medical and then met with the Kelso defendants and disclosed confidential and proprietary information concerning General Medical's financial condition, business strategy, growth prospects and value, including material information *withheld* from Rabco and General Medical and their Boards. The management defendants also allegedly disclosed confidential information about Rabco and the plaintiff, including the plaintiff's plans for the business, his targeted return on shareholders' investment and what the plaintiff considered to be an acceptable sales price for Rabco. The plaintiff alleged that the management defendants told Goldberg that if plaintiff found out that they had met with Kelso, it would end the possibility of Kelso dealing with the plaintiff or would materially increase the price and could or would result in their employment being terminated for cause, which would allow Rabco to buy their stock for a lesser sum. Consequently, it is alleged that Goldberg pretended to make an "unsolicited" offer on behalf of Kelso to buy General Medical with management participating in the buyout and remaining with the company. Plaintiff alleged that the management defendants then pretended to meet Goldberg for the first time at a meeting arranged by plaintiff.

On July 6, 1993, the plaintiff and Kelso agreed on a price of $225 million in cash, plus an additional amount of $9.5 million, and on August 31, 1993, General Medical was acquired by defendant GM Holdings, Inc., controlled by the management defendants, Goldberg and Kelso. Two Kelso affiliates acquired an 82.8% interest in GM Holdings. All directors and executive officers of General Medical also received 10.6% of GM Holdings. The plaintiff asserted that he first learned of what had taken place in May of 1995 when he read a deposition of defendant Nedrow in an unrelated Federal action in Virginia.

The plaintiff therefore instituted this action for common-law fraud against all of the defendants, for breach of fiduciary duty against the management defendants, for participation in and inducing the breach of fiduciary duty against Kelso and Goldberg, and sought damages, including punitive damages. The IAS Court granted defendants' motions to dismiss the class action complaint, with prejudice, for failure to state a cause of action, failure to state in detail the circumstances constituting the claims for fraud and inducing and participating in a breach of fiduciary duty and for failure to fulfill the prerequisites to bringing a class action.

CPLR 3013 provides: "Statements in a pleading shall be sufficiently particular to give the court and parties notice of the transactions, occurrences, or series of transactions or occurrences, intended to be proved and the material elements of each cause of action or defense."

CPLR 3016, which deals with particularity required in specific actions, provides, in subdivision (b), with respect to a cause of action for fraud: "Where a cause of action or defense is based upon misrepresentation, fraud, mistake, wilful default, breach of trust or undue influence, the circumstances constituting the wrong shall be stated in detail."

These provisions, read together, mandate only that the complaint allege the misconduct complained of in *sufficient detail* to inform the defendants of the substance of the claims. As the Court of Appeals has noted with respect to CPLR 3016 (b): "This provision requires only that the misconduct complained of be set forth in sufficient detail to clearly inform a defendant with respect to the incidents complained of and is not to be interpreted so strictly as to prevent an otherwise valid cause of action in situations where it may be 'impossible to state in detail the circumstances constituting a fraud' (*Jered Contr. Corp. v New York City Tr. Auth.*, 22 NY2d 187, 194)." (*Lanzi v Brooks*, 43 NY2d 778, 780.)

■ Although the IAS Court found that the complaint failed to specify which defendants were involved in the allegedly clandestine meetings, which defendants agreed to keep the meetings separate or who participated in the continuing secret contacts, the gravamen of the complaint was that the defendants secretly conspired to orchestrate a buyout of Rabco at an unfairly low price using wrongfully disclosed and acquired confidential and proprietary information. Under the circumstances, where the facts were "peculiarly within the knowledge of the party against whom the [fraud] is being asserted"

(*Jered Contr. Corp. v New York City Tr. Auth.*, *supra*, at 194), the misconduct complained of was set forth in sufficient detail to apprise defendants of the alleged wrongs. Given that the allegations must be given their most favorable intendment (*Arrington v New York Times Co.*, 55 NY2d 433, 442, *cert denied* 459 US 1146), "it would be impossible for the plaintiff to state the circumstances in more detail because, if the allegations are true, only the defendants would have knowledge of the details" (*Grumman Aerospace Corp. v Rice*, 196 AD2d 572, 573).

■ Further, as noted by plaintiff, the IAS Court erroneously decided factual issues in deciding the motion to dismiss. Thus, the court found that plaintiff Bernstein had full access to General Medical's books and records and so could not have relied upon any of defendants' fraudulent statements and omissions. However, there is no reason to believe the management defendants would have recorded possible wrongdoing in the company books and records. Also, the court improperly found that because the fairness opinion from Smith Barney concluded that the leveraged buyout price was fair, the complaint had to be dismissed. This improperly analyzed the "opinion" of Smith Barney and assumed that the brokerage house was given all the salient facts in rendering its opinion.

Since no discovery had taken place at the time the motion to dismiss was made, the plaintiff had no way of knowing the precise dates, the participants in or the extent of the conversations alleged to have taken place in furtherance of the alleged scheme to defraud. However, contrary to the conclusion of the IAS Court, the allegations in the complaint, considered in conjunction with the deposition testimony of Nedrow, an attorney who was the general counsel to Rabco and General Medical, and considering the fact that specific details of the alleged fraud were peculiarly within the knowledge of the defendants, sufficiently complied with the requirements of CPLR 3016 (b) and 3013.

■ The IAS Court also erred when it dismissed the fraud cause of action for failure to allege scienter, justifiable reliance and damages. Giving the allegations their most favorable intendment (*Arrington v New York Times Co.*, *supra*), the complaint adequately alleged misrepresentation of or failure to disclose a material fact, falsity, scienter, justifiable reliance by plaintiff and injury, the elements of fraud (*Ambassador Factors v Kandel & Co.*, 215 AD2d 305, 307). Even without discovery, the allegations that the management defendants schemed with Kelso to induce plaintiff to sell his stock at a price they deemed

lower than a fair value for said stock supported an inference of intent to deceive plaintiff. As noted above, while the IAS Court found that plaintiff was in possession of "books and records" and, therefore, there was no "reliance" by him, there was no evidence or reason to believe the management defendants would record their fraudulent and secret dealings with Kelso. Further, while Smith Barney did give a "fairness opinion", the court overlooked the fact that the same information possessed by the management defendants that was given to Kelso but withheld from plaintiff could also have been withheld from Smith Barney.

■ Finally, the court erred when it found that plaintiff failed to plead adequate damages to sustain a cause of action for fraud since the plaintiff actually earned a profit in the transaction. " 'The true measure of damage is indemnity for the actual pecuniary loss sustained as the direct result of the wrong' or what is known as the 'out-of-pocket' rule (*Reno v Bull*, 226 NY 546, 553; *Hanlon v MacFadden Publ.*, 302 NY 502). Under this rule, the loss is computed by ascertaining the 'difference between the value of the bargain which a plaintiff was induced by fraud to make and the amount or value of the consideration exacted as the price of the bargain' (*Sager v Friedman*, 270 NY 472, 481). Damages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained." (*Lama Holding Co. v Smith Barney*, 88 NY2d 413, 421.)

Contrary to the conclusion reached by the IAS Court, the plaintiff was not trying to recover profits received by the company after his sale. Instead, he sought to recover the difference between the price he received in the sale of the company and the price he would have received had his employees and Kelso not deceived him.

■ The IAS Court also found that plaintiff lacked standing to bring a direct action for breach of fiduciary duty and inducing breach of fiduciary duty. Where a corporation is dissolved or sold in a transaction marred by breaches of fiduciary duty, the wronged shareholders of the former corporation are not left without a remedy. "No one would assert that a former owner suing for loss of property through deception or fraud has lost standing to right the wrong that arguably caused the owner to relinquish ownership or possession of the property." (*Cede & Co. v Technicolor, Inc.*, 542 A2d 1182, 1188 [Del Sup Ct].) The Delaware Supreme Court later expressly found that complaining shareholders have standing to pursue individual

actions involving a corporate transaction involving fair dealing or a fair price even after they are "cashed-out" through a merger (*Kramer v Western Pac. Indus.*, 546 A2d 348, 354 [Del]). Moreover, although the IAS Court dismissed these claims on the basis of standing, defendants' contention that they fail to state a cause of action is without merit. Thus, we have previously held a complaint to have sufficiently alleged a scheme to defraud a company since it alleged that the defendants, employees of the company, had a fiduciary duty to it but engaged in the scheme to defraud. The plaintiff was found to also have sufficiently alleged all of the elements necessary to sustain a claim for aiding and abetting the breach of fiduciary duty since it was alleged that another defendant had knowledge of the employees' relationship to the company, and participated in the scheme to defraud (*Shearson Lehman Bros. v Bagley*, 205 AD2d 467). The allegations herein alleging a breach of fiduciary duty on the part of the management defendants and an inducement of such breach by Kelso are similar, and, consequently, are sufficiently pleaded.

■ The IAS Court also erred in prematurely dismissing the class action allegations in the complaint before an answer had been served. Pursuant to CPLR 902, a motion to determine whether a class action may be maintained is to be made within 60 days after the time to serve the responsive pleading has expired. The requirements for class certification, as set forth in CPLR 901, are:

"a. One or more members of a class may sue or be sued as representative parties on behalf of all if:

"1. the class is so numerous that joinder of all members, whether otherwise required or permitted, is impracticable;

"2. there are questions of law or fact common to the class which predominate over any questions affecting only individual members;

"3. the claims or defenses of the representative parties are typical of the claims or defenses of the class;

"4. the representative parties will fairly and adequately protect the interest of the class; and

"5. a class action is superior to other available methods for the fair and efficient adjudication of the controversy."

While we do not decide the issue herein, we note that the "prerequisites" for declaring a class action are, at least, arguably present under the circumstances. Prior to the acquisition, Rabco had more than 150 shareholders, making joinder of each

of the shareholders impracticable. Since there was a single alleged fraud and breach of fiduciary duty as to all former shareholders, there are questions of law *and* fact common to the class (*see, King v Club Med*, 76 AD2d 123). The claims of plaintiff are typical of the claims of the class and plaintiff can fairly and adequately protect the interest of the class. Finally, at this early stage of the proceeding, it appears that a class action will be superior to other available methods for the fair and efficient adjudication of the controversy. Although the IAS Court found that the claims of plaintiff, as the owner of almost 50% of Rabco stock, as Chairman, President and CEO of Rabco and as Chairman of General Medical, were not typical of the putative class, there is no way of knowing with certainty at this stage, without full pleadings and discovery, whether this is true. Thus, it is not known which members of the proposed class had access to the information the plaintiff had or did not have and who might have been deceived by the defendants. We emphasize again that, at this early stage, it appears from the pleadings and submissions that plaintiff and all class members were damaged by the same alleged wrongful conduct of the defendants and that the plaintiff's interest appears aligned with those of the other members of the class who seek full compensation for the surrender of their stock.

■ The IAS Court also erred in dismissing the punitive damages claim. It has been held that such damages are available "only in those limited circumstances where it is necessary to deter defendant and others like it from engaging in conduct that may be characterized as 'gross' and 'morally reprehensible,' and of ' "such wanton dishonesty as to imply a criminal indifference to civil obligations" ' (*Rocanova [v Equitable Life Assur. Socy.]*, 83 NY2d, at 614, *supra*, quoting, *Walker v Sheldon*, 10 NY2d 401)." (*New York Univ. v Continental Ins. Co.*, 87 NY2d 308, 315-316.)

However, the Court of Appeals, in that case, noted that where a lawsuit has its genesis in a contractual relationship between the parties, "the threshold task for a court considering defendant's motion to dismiss a cause of action for punitive damages is to identify a tort independent of the contract" (*supra*, at 316). Here, the allegations of breach of fiduciary duty and inducing the breach constitute actions "outside the contract but intended to defeat the contract," and thus are sufficient to support an independent tort claim (*supra*, at 316).

■ Finally, the IAS Court, in view of its dismissal, did not reach the issue raised by the management defendants of lack

of personal jurisdiction over defendants Garber and Nedrow. Defendants assert, since they resided in Virginia during the time of the transactions at issue, that the court lacks jurisdiction over them. However, the complaint alleges that these defendants attended meetings in New York at which the scheme to defraud plaintiff was planned and carried out, and, therefore, committed tortious acts within this State, conferring jurisdiction pursuant to CPLR 302 (a) (2).

Accordingly, the judgment of the Supreme Court, New York County (Ira Gammerman, J.), entered October 15, 1996, and order of the same court and Justice, entered September 30, 1996, which granted defendants' motion to dismiss the verified class action complaint, should be reversed, on the law, with costs, the motion denied, and the complaint reinstated.

ROSENBERGER, J. P., WALLACH and RUBIN, JJ., concur.

Order and judgment, Supreme Court, New York County, entered September 30, 1996 and October 15, 1996, respectively, reversed, on the law, with costs, defendants' motion to dismiss the verified class action complaint denied, and the complaint reinstated.