Maddicks v Big City Props., LLC (2018 NY Slip Op 05523)





Maddicks v Big City Props., LLC


2018 NY Slip Op 05523


Decided on July 26, 2018


Appellate Division, First Department



Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.


This opinion is uncorrected and subject to revision before publication in the Official Reports.



Decided on July 26, 2018

Friedman, J.P., Richter, Andrias, Kapnick, Webber, JJ.


6315 656345/16

[*1]Theresa Maddicks, et al., Plaintiffs-Appellants,
v
Big City Properties, LLC, et al., Defendants, Big City Realty Management, LLC, et al., Defendants-Respondents.


Newman Ferrara LLP, New York (Roger A. Sachar, Jr. of the bar of the State of Missouri, admitted pro hac vice, of counsel), for appellants.
Koss & Schonfeld, LLP, New York (Simcha D. Schonfeld of counsel), for respondents.



Order, Supreme Court, New York County (Erika M. Edwards, J.), entered November 16, 2017, which, upon defendants' motion, dismissed the amended complaint pursuant to CPLR 3211 without prejudice, modified, on the law, to deny the motion as to the claims, except those involving General Business Law § 349, against defendants Big City Realty Management, LLC, Big City Acquisitions, LLC, 408-412 Pineapple LLC, 510-512 Yellow Apple, LLC, 535-539 West 155 BCR, LLC, 545 Edgecombe BCR, LLC, 106-108 Convent BCR, LLC, 110 Convent BCR, LLC, 3750 Broadway BCR, LLC, 3660 Broadway BCR, LLC, and 605 West 151 BCR, LLC, and to deny the motion as to the class action allegations against these defendants, except those supporting the General Business Law § 349 claim, and otherwise affirmed, without costs.
Defendants moved to dismiss the claims against 145 Pineapple LLC, 2363 ACP Pineapple LLC, 513 Yellow Apple LLC, 603-607 West 139th BCR LLC, 3660 Broadway BCR LLC, 559 West 156 BCR LLC, 605-607 West 141 BCR LLC, and 580 St. Nicholas BCR LLC on the ground that plaintiffs had made no allegations of wrongdoing against those defendants. The court sua sponte dismissed the claims against Big City Realty Management and the other defendants named in the decretal paragraph above based on an argument not raised by defendants. Since plaintiffs are prejudiced by their inability to respond to the court's reasoning in support of the dismissal (see Matter of Dental Socy. of State of N.Y. v Carey, 92 AD2d 263, 264 [3d Dept 1983], affd on other grounds 61 NY2d 330 [1984]), we reinstate the claims only against the defendants named in the decretal paragraph, except for those involving General Business Law § 349. We do not, in any way, prejudge arguments that have not been fully briefed on this appeal, e.g., that 545 Edgecombe BCR does not own 545 Edgecombe Avenue, or that plaintiffs have not actually pleaded conspiracy or aiding and abetting. Moreover, it appears from the record that defendant 3660 Broadway BCR, LLC owns one of the buildings named in plaintiffs' complaint. 3660 Broadway's reinstatement is without prejudice to any claims it may raise, later in this litigation, about this ownership issue.
We affirm the dismissal of the class action allegations addressed to the General Business Law § 349 claim and the General Business Law § 349 claim as against the landlord defendants since plaintiffs make no arguments on appeal as to that claim. As to the remaining class allegations, the dismissal, at this early stage, before an answer was filed and before any discovery occurred, was premature (Bernstein v Kelso & Co., 231 AD2d 314 [1st Dept 1997]). As this Court noted in Bernstein, "Pursuant to CPLR 902, a motion to determine whether a class action may be maintained is to be made within 60 days after the time to serve the responsive pleading [*2]has expired" (id. at 323). Because the time to make such a motion had not occurred, it was premature, in this case, for the court to engage in a detailed analysis of whether the requirements for class certification were met (see Ackerman v New York Hosp. Med. Ctr. of Queens, 127 AD3d 794, 796 [2d Dept 2015]).
It does not appear conclusively from the complaint that, as a matter of law, there is no basis for class action relief (see Downing v First Lenox Terrace Assoc., 107 AD3d 86, 91 [1st Dept 2013], affd sub nom. Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382 [2014]). For example, plaintiffs allege that some defendants receive J-51 tax benefits and are therefore required to provide tenants with rent-stabilized leases but failed to do so. This claim was also made in Borden (see 24 NY3d at 390), and the Court of Appeals found that the plaintiffs satisfied the class action requirements of numerosity, predominance of common issues of law or fact, typicality of the named plaintiffs' claims, adequate representation, and superiority of class action versus other methods (see id. at 399-400).
Although the instant action involves 11 buildings and 8 owners, all the buildings are allegedly managed by Big City Realty Management, and all the owners are allegedly part of one holding company, Big City Acquisitions. Moreover, Downing — another putative class action about J-51 (see 107 AD3d at 88) — involved "a residential complex owned by defendants" (id.).
The dissent argues that the claims at issue are fact intensive, and can be determined only by examining the evidence concerning each individual unit. As noted above, this cannot be determined, as a matter of law, merely from reading the complaint. The dissent fails to consider plaintiffs' allegation that the setting of the improper rents in these apartments was part of a systematic effort by Big City Acquisitions to avoid compliance with the rent stabilization laws. Plaintiffs identify several different ways this alleged scheme was accomplished, and offer examples of each. We disagree with the dissent's statement that it is "irrelevant" whether Big City was engaged in a systematic effort to destabilize these units. If discovery were to show that, for example, Big City charged all the tenants the same fraudulent and inflated amounts for claimed improvements, this would support a class action and make one tenant's proof relevant to that of other tenants. It simply is premature, before discovery and before a class certification motion has been made, to rule out the class claims in their entirety.
Although there may be some differences in the documents to be examined for each apartment, whether individual issues will predominate over class concerns can be fleshed out once plaintiffs make a motion for class certification and defendants oppose it. We note, however, that the possibility that the damages might be different for individual plaintiffs is not a reason to deny class certification (Pruitt v Rockefeller Ctr. Props., 167 AD2d 14, 23 [1st Dept 1991]). At this stage when defendants have not answered, we do not know what documents they have, if any, to justify the increases or what explanations they have for the purported failures to register the apartments. If their defenses are the same for many of the units, then the scheme alleged by plaintiffs may have relevance, and the potential members of the class should not, as a matter of law, be precluded from raising these claims as a group. Moreover, class actions may be appropriate where the members of the class include former tenants, who may be unaware of their rights (see generally Borden, 24 NY3d at 399).
Although the dissent criticizes the majority for not citing any cases in which class allegations like these have been sustained, as noted above, generally a detailed analysis of class certification status is inappropriate at the pleading stage. Thus, it is not surprising that there is not extensive case law analyzing class pleadings at this stage. It is worth noting that the dissent, which takes the majority to task for its holding, only cites one case, from another Department, in which class claims have been dismissed at the pre-answer stage. That case, Wojciechowski v Republic Steel Corp. (67 AD2d 830 [4th Dept 1979], lv dismissed 47 NY2d 802 [1979]), does not contain a lot of facts, but the decision contains no reference to the type of common scheme alleged in the complaint here.
Finally, the dissent acknowledges that the J-51 claims might be appropriate for class relief. We see no reason, at this pre-answer stage, to distinguish between those claims and the other aspects of the purported scheme asserted by plaintiffs. The J-51 claims will involve the review of individual documents, and the assessment of individual rent histories. If those claims [*3]are potentially appropriate for class action relief, the others should be too, at least for pleading purposes.
All concur except Friedman, J.P. and
Andrias, J. who dissent in part in a memorandum by Friedman, J.P. as follows:




FRIEDMAN, J.P. (dissenting in part)


At issue in this putative class action are claims by current and former tenants of several different buildings, allegedly owned by entities under common control, for rent overcharges in violation of the Rent Stabilization Law. Although the complaint alleges that the overcharges fall into four broadly similar categories, and that the overcharges were systematically planned, the complaint does not identify any question of law or fact common to the entire proposed class (or to the proposed subclass of current tenants). Stated otherwise, in the end, regardless of any plan by defendants or any overcharges of other tenants, each class member either was or was not overcharged — a question that can be determined only by looking at the evidence concerning that tenant's individual unit. In nonetheless modifying the order of Supreme Court to reinstate plaintiffs' class allegations, the majority writes a new roadmap for the litigation of these types of disputes, turning every overcharge claim into a potential class action. This certainly has not been the approach taken with these cases until now — the majority cites no case in which a similar class has been certified or even held certifiable — and I see no reason for the change effected by today's decision.
Plaintiffs seek to prosecute their claims for alleged rent overcharges on behalf of a putative class of current and former rent-stabilized tenants of 21 different buildings [FN1]. The 21 buildings, although owned by various different entities, allegedly comprise a single "Big City Portfolio" (as dubbed by plaintiffs) under the common control of defendant Big City Realty Management LLC (Management LLC), as property manager, and defendant Big City Acquisitions, LLC (Acquisitions LLC), as holding company. The overcharges allegedly have resulted from four different unlawful practices, each allegedly orchestrated on a portfolio-wide basis: (1) inflating rent increases based on individual apartment improvements (IAIs); (2) failing to register accurate and complete rental information; (3) misrepresenting negotiated initial fair market rents (FMRs) for units moving from rent control to rent stabilization; and (4) failing to offer stabilized leases for units in buildings for which the owner received J-51 tax benefits.
On this appeal by plaintiffs from an order that, among other things, struck their class allegations on a pleading motion, the main issue is whether "it appears conclusively from the complaint and from the affidavits that there [is] as a matter of law no basis for class action relief" (Downing v First Lenox Terrace Assoc., 107 AD3d 86, 91 [1st Dept 2013] [internal quotation marks omitted], affd sub nom. Borden v 400 E. 55th St. Assoc., L.P., 24 NY3d 382 [2014], quoting Wojciechowski v Republic Steel Corp., 67 AD2d 830, 831 [4th Dept 1979], lv dismissed 47 NY2d 802 [1979])[FN2]. Unlike the majority, I would answer this question in the affirmative. As [*4]more fully explained below, I reach this conclusion because it is apparent from the first amended complaint (the complaint) itself that one of the essential prerequisites for the maintenance of a class action is absent from this case: the overcharge claims of the members of the putative class involve no common questions of law or fact, as required by CPLR 901(a)(2). To be clear, the point I am making is not that the common questions will not predominate; it is that questions common to the class, predominant or otherwise, simply do not exist. Indeed, the majority itself does not identify any such common question.
Under plaintiffs' first three overcharge theories (inflation of IAI increases, failing to register rents, and misrepresentation of initial FMRs), whether any particular tenant has actually been overcharged can be determined only by examining the evidence pertaining to that tenant's individual apartment. Proof that defendants engaged in these practices with respect to other apartments in the portfolio — even proof that such overcharges were part of a conscious scheme — will not establish any element of an overcharge claim with respect to any particular unit as to which evidence is not presented. Under plaintiffs' fourth overcharge theory (deregulation of units in J-51 buildings), because landlords receive J-51 benefits with respect to buildings or complexes as a whole, class relief may potentially be appropriate on a building-wide or complex-wide basis (see Downing, 107 AD3d at 88 [reinstating class allegations in an action alleging unlawful deregulation of units in a residential complex receiving J-51 benefits]). The complaint, however, does not propose classes defined by tenancy in particular buildings or complexes but one overall class for the entire Big City Portfolio, of which only 4 buildings (out of 21) are alleged to have received J-51 benefits. Here, proof that defendants deregulated units in certain buildings for which they received J-51 benefits will not be probative of whether another building in the portfolio was or was not part of the J-51 program.
In view of the foregoing, it simply cannot be said that, in this action, "questions of law or fact common to the class . . . [will] predominate over any questions affecting only individual members" (CPLR 901[a][2] [emphasis added]). Indeed, to reiterate, I cannot see that this action will involve any question of law or fact common to the class (or subclass) proposed in the complaint — because each question raised by the action pertains, not to the entire real estate portfolio plaintiffs use to define the proposed class and subclass, but to a particular unit or (in the case of the J-51 issue) a particular building within the portfolio. Accordingly, I respectfully dissent from the majority's reinstatement of plaintiff's class allegations, and would affirm the dismissal of those class allegations, without prejudice to an amendment of the complaint to propose the certification of classes defined as current and former tenants of any buildings for which the owners allegedly have received J-51 tax benefits.[FN3]
At this point, I turn to a more detailed examination of the allegations of the complaint and the action's procedural history. Plaintiffs are current or former tenants of 24 different apartments in 11 different Manhattan residential buildings, 9 of which are allegedly owned by 7 different defendants (collectively, the landlord defendants)[FN4]. As previously noted, these 11 buildings — along with 10 other buildings in which no plaintiff has ever resided — are alleged to comprise what plaintiffs denominate the "Big City Portfolio" of real properties under the common control of defendants Management LLC and Acquisitions LLC, although the complaint does not allege how the various defendant entities are related [FN5]. Based on allegations that their respective [*5]landlords have overcharged them for rent through the four methods previously described, plaintiffs seek monetary damages, declaratory relief and reformation of their respective leases. The complaint proposes the certification of a class of "current and former tenants of Big City Portfolio buildings . . . who paid rent in excess of the legal limit" and a subclass of "all current tenants of Big City Portfolio building[s], who currently reside in a rent-stabilized apartment or [an] unlawfully deregulated apartment."
In lieu of answering, defendants moved to dismiss the complaint pursuant to CPLR 3211. In addition to arguing that the complaint was legally insufficient on substantive grounds (specifically, the statute of limitations and failure to exhaust administrative remedies), defendants argued in support of their motion that plaintiffs' class allegations should be dismissed as legally insufficient. Without reaching defendants' substantive arguments, the court granted the motion to dismiss the complaint in its entirety, apparently on a theory of misjoinder. In its decision, the court also set forth its view that the action "fails as a class action because the questions of law or fact common to the class do not predominate over questions affecting only individual members, the claims or defenses may not be typical of the class and a class is not superior to other available methods of adjudication."
In opposing the present appeal, defendants have not pressed, as grounds for affirming the dismissal of the complaint in its entirety, either the substantive arguments they raised before Supreme Court or Supreme Court's misjoinder theory [FN6]. Since defendants present us with no justification for Supreme Court's dismissal of the complaint as against the seven landlord defendants and 545 Edgecombe BCR, LLC (defendants having admitted, as noted, that the latter holds the ground lease for 545 Edgecombe Avenue), I concur in the reinstatement of the complaint as against these defendants. As to Management LLC and Acquisitions LLC (which are not alleged to have owned any of the subject buildings directly), although defendants argue on appeal that the complaint does not sufficiently allege a basis for imposing liability on these two entities, this argument was not raised before Supreme Court in support of the motion to dismiss. Accordingly, I also concur in the reinstatement of the complaint as against Management LLC and Acquisitions LLC.
To reiterate, it is plain from the allegations of the complaint itself that whether defendants have illegally overcharged rent can be determined only by examining the evidence concerning each individual unit (or, in the case of the J-51 claim, each individual building). In deciding whether there has been a rental overcharge with respect to any particular unit, evidence of overcharges with respect to other units in the alleged 21-building "Big City Portfolio," or even of a systemic plan to engage in such overcharging, will be immaterial [FN7]. And, again, in determining liability, there are no apparent "questions of law or fact common to the [proposed] class" (CPLR [*6]901[a][2]). Raising the same question about hundreds of different apartments, or 21 different buildings, does not give rise to a common question simply because all of the properties are alleged to be under common control.[FN8]
As previously noted, in Downing, on which the majority mistakenly relies, this Court recognized that the legal sufficiency of class allegations may be determined on a CPLR 3211 motion to dismiss where "it appears conclusively from the complaint and affidavits that there [is] as a matter of law no basis for class action relief" (107 AD3d at 91). Here, it is apparent from plaintiffs' own pleadings that there can be no basis for class relief based on the class and subclass they propose. Thus, there is no reason to defer the resolution of this issue to a motion for class certification under CPLR 902. Contrary to the majority's view that it would be "premature" to determine the sufficiency of the complaint's class allegations on a pre-discovery motion to dismiss, the statutory direction that a motion for class certification be made "[w]ithin sixty days after the time to serve a responsive pleading has expired" (CPLR 902) demonstrates that the CPLR does not contemplate that substantial discovery is necessary to determine whether an action may be maintained on a class basis.
Further, in Downing, we merely declined to dismiss class allegations that defined the proposed class by tenancy in a single residential complex for which the owner had received J-51 tax benefits. Nothing in Downing supports the majority's view that it may be proper to certify a class defined by tenancy in any of 21 buildings, only four of which are alleged to have participated in the J-51 program, in an action involving three theories of rental overcharge that have nothing to do with the J-51 claim. Tellingly, the majority does not cite any case in which a putative class of rent-stabilized tenants possessing separate and distinct overcharge claims against a common landlord (or different landlords under common control) was certified (or held potentially certifiable), other than in the J-51 situation presented in Downing [FN9]. While the [*7]majority rejects my position that the sufficiency of the class allegations may be determined on a motion to dismiss, the majority itself is evidently unable to locate any case in which a class similar to the amorphously broad one proposed here was approved even on a motion for class certification.
The foregoing notwithstanding, the majority asserts that we somehow cannot know, "merely from reading the complaint," that the merit of each class member's overcharge claim will be determined from the evidence concerning his or her individual unit. It seems to me that this is an attempt to distract attention from the failure, by plaintiffs and the majority alike, to identify any question of law or fact common to the class. We certainly do know from the complaint what the elements of each class member's overcharge claim will be and, as previously discussed, proof of those elements will involve evidence concerning the individual unit (or, on the J-51 claim, the individual building), not the portfolio as a whole. The possibility that the alleged overcharges resulted from a portfolio-wide "systematic effort . . . to avoid compliance with the rent-stabilization laws," while troubling (and perhaps of interest to the housing authorities), is irrelevant to the merits of any individual class member's overcharge claim: the class member either was or was not overcharged, regardless of any overcharges (or lack thereof) to other units, and regardless of the existence (or nonexistence) of any portfolio-wide scheme. That similar claims and defenses may be raised with regard to different units does not create a common question, either of law or fact, with respect to the different units.[FN10]
For the foregoing reasons, I dissent from the majority's decision to the extent it reinstates plaintiffs' class allegations. In my view, we should affirm the dismissal of plaintiffs' class allegations, without prejudice to an amendment of the complaint to replead the class allegations solely on the J-51 claim, as previously discussed. In all other respects, I concur with the majority's disposition of the appeal.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: JULY 26, 2018
CLERK



Footnotes

Footnote 1:As more fully discussed below, the named plaintiffs in this action are current or former tenants of only 11 of these 21 buildings. In addition, plaintiffs propose a subclass of current rent-stabilized tenants of the 21 buildings for purposes of the prospective relief they seek.

Footnote 2:The majority, in asserting that class allegations should never be dismissed upon a motion to dismiss, ignores this Court's contrary holding in Downing while relying on dicta in the much older case of Bernstein v Kelso & Co. (231 AD2d 314 [1st Dept 1997]). Bernstein is in any event distinguishable because, after making the statements relied on by the majority, this Court went on to observe that "the prerequisites' for declaring a class action are, at least, arguably present under the circumstances" (id. at 323). Ackerman v New York Hosp. Med. Ctr. of Queens (127 AD3d 794 [2d Dept 2015]), the other decision cited by the majority on this point, does not support the majority's position, because Ackerman held that the class allegations in that case were legally sufficient and pleaded with factual particularity (see id. at 796). Further, the majority itself appears to be unconvinced of the merit of its own objection to considering the sufficiency of the class allegations at this juncture, since it also argues that "[i]t does not appear conclusively from the complaint that . . . there is no basis for class action relief."

Footnote 3:The majority states that it "see[s] no reason" to distinguish between the J-51 claims and the other overcharge claims asserted in the complaint. The reason for the distinction is that J-51 claims arising from the same building or complex, unlike the other categories of claims in this action, do raise a common issue of law or fact — whether the building or complex participates in the J-51 program — even though the J-51 claims will also inevitably involve individual issues. The determination of whether the common question in a J-51 case predominates over individual questions is appropriately deferred to the certification motion.

Footnote 4:Specifically, as alleged in the complaint, 26 plaintiffs are current tenants of 22 different apartments, and the two remaining plaintiffs are former tenants of two other apartments. The relevant buildings, their respective alleged owners (if any), and the number of apartments currently or previously leased to the named plaintiffs in each, are as follows: (1) 106 Convent Avenue, owned by defendant 106-108 Convent BCR, LLC (two apartments); (2) 110 Convent Avenue, owned by defendant 110 Convent BCR, LLC (two apartments); (3) 408 West 129th Street, owned by defendant 408-412 Pineapple LLC (five apartments); (4) 412 West 129th Street, owned by defendant 408-412 Pineapple LLC (five apartments); (5) 510 West 134th Street, owned by defendant 510-512 Yellow Apple, LLC (two apartments); (6) 512 West 134th Street, owned by defendant 510-512 Yellow Apple, LLC (two apartments); (7) 535 West 155th Street, owned by defendant 535-539 West 155 BCR, LLC (one apartment); (8) 3750 Broadway, owned by defendant 3750 Broadway BCR, LLC (one apartment); (9) 555 West 151st Street (two apartments); (10) 605 West 151st Street, owned by defendant 605 West 151 BCR, LLC (one apartment); (11) 545 Edgecombe Avenue (one apartment). The complaint fails to allege which entities own the buildings at 555 West 151st Street and 545 Edgecombe Avenue. In their papers supporting the motion to dismiss, defendants advised the court that defendant 3660 Broadway BCR, LLC owns 555 West 151st Street, and that defendant 545 Edgecombe BCR, LLC (which is named in the caption but not mentioned in the body of the complaint) holds the ground lease for 545 Edgecombe Avenue.

Footnote 5:As noted, plaintiffs allege that, in addition to the 11 buildings of which they are current or former tenants, the so-called "Big City Portfolio" includes 10 other buildings. Although the eight entities that allegedly hold title to these ten other buildings are also named as defendants, the complaint contains no allegations of wrongdoing against them. I concur with the majority to the extent it affirms the dismissal of the complaint as against these defendants. I also concur with the majority's reinstatement of the complaint as against 3660 Broadway BCR, LLC, which, as noted, defendants admit to be the owner of 555 West 151st Street, as to which two plaintiffs allege rental overcharges.

Footnote 6:Apart from the question of whether this action may properly be maintained as a class action, it is questionable (as Supreme Court correctly recognized) whether the claims of all of the 28 named plaintiffs are properly joined in one action (see CPLR 1002[a]). However, "[m]isjoinder of parties is not a ground for dismissal of an action" (CPLR 1003).

Footnote 7:Again, as to the claim that defendants entered into free market leases for units in buildings participating in the J-51 program, proof that defendants engaged in this practice with respect to one building in the J-51 program is not probative of whether any other particular building in the portfolio was part of the J-51 program or, if it was, of whether defendants entered into free market leases for units in that building.

Footnote 8:For example, proof that defendants overstated the cost of IAIs made to certain of the named plaintiffs' units will prove nothing about whether the cost of IAIs made to the unit of any other given class member was similarly overstated. By the same token, proof of the complaint's allegation that "[d]efendants and/or their predecessors in interest failed to register the apartment [leased to plaintiff Johanna Karlin] in 2001, from 2004 to 2005, from 2007 to 2010, and from 2012 to 2015," will do nothing to establish a failure to comply with registration requirement for any other unit in the entire portfolio. Nor will proof that "the first rent-stabilized lease [of the apartment leased to plaintiff Theresa Maddicks] had a legal regulated rent of $1,675.60, but Maddicks was given a preferential rent of $1,100," do anything to establish that the initial FMR of any other class member's apartment was misrepresented.

Footnote 9:The other case relied on by the majority is also distinguishable. Pruitt v Rockefeller Ctr. Props. (167 AD2d 14 [1st Dept 1991]) was an action alleging that a prospectus issued in connection with a public securities offering was false and misleading, which raised classwide common questions of law and fact as to "the truth or falsity of the prospectus'[s] statements" (id. at 21). Plaintiffs in this case do not allege that all members of the proposed class or subclass were misled by identical written statements. While I agree with Pruitt's uncontroversial holding that the need for individual determinations of damages does not necessarily bar class certification (see id. at 23), in this case the question of liability itself is entirely individual (either as to each unit or, on the J-51 claim, each building) and can be resolved only on an individual basis.

Footnote 10: The hypothetical situation posited by the majority as a possible basis for class relief — that defendants "charged all the tenants the same fraudulent and inflated amounts for claimed improvements — is not alleged in the complaint. While the complaint alleges that the costs of IAIs to some — but not all — plaintiffs' were overstated, there is no allegation that the costs were overstated in the same amounts.