International Business Machs. Corp. v GlobalFoundries U.S. Inc. (2024 NY Slip Op 06425)

International Business Machs. Corp. v GlobalFoundries U.S. Inc.

2024 NY Slip Op 06425

Decided on December 19, 2024

Appellate Division, First Department

Kapnick, J. 

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and subject to revision before publication in the Official Reports.

Decided and Entered: December 19, 2024
SUPREME COURT, APPELLATE DIVISION
First Judicial Department

Troy K. Webber
Jeffrey K. Oing Barbara R. Kapnick Tanya R. Kennedy

Index No. 653625/21 Appeal No. 2954 Case No. 2024-03740 

[*1]International Business Machines Corporation, Plaintiff-Appellant,
v
GlobalFoundries U.S. Inc., Defendant-Respondent.

Plaintiff appeals from an order of the Supreme Court, New York County (Joel M. Cohen, J.), entered May 14, 2024, which granted defendant's motion to strike the jury demand with regard to plaintiff IBM's claims for fraudulent inducement and promissory estoppel.

Paul, Weiss, Rifkind, Wharton & Garrison, LLP, New York (Richard C. Tarlowe, Robert A. Atkins, Jay Cohen and Pietro J. Signoracci of counsel), for appellant.
Weil Gotshal & Manges LLP, New York (Jessica L. Falk, David J. Lender, Gregory Silbert and Jennifer Brooks Crozier of counsel), for respondent.

Kapnick, J. 

At issue in this appeal is whether a broad contractual jury waiver provision applies to plaintiff's claims for fraudulent inducement and promissory estoppel. We find that in this case it does and that the motion court properly granted defendant's motion to strike the jury demand.
From 2013 to June 2015, plaintiff International Business Machines Corporation (IBM) and defendant GlobalFoundries U.S. Inc., a manufacturer of semiconductors, engaged in discussions concerning a collaborative venture whereby IBM would transfer its microelectronics business, including technology, engineers and employees, to GlobalFoundries, along with a sum of $1.5 billion, and GlobalFoundries would develop, manufacture and supply next generation 14nm and 10nm high performance semiconductor chips for IBM.
IBM had decided to divest itself of its microelectronics division because of the substantial, and increasing, capital investment needed to support the constant advances in semiconductor technology. IBM specifically alleges that, during the parties' negotiations, it "would not agree, and did not agree, to form such a technology alliance until GlobalFoundries gave its representation and assurance that it had made a long-term strategic and financial commitment to the development of High Performance chips." GlobalFoundries submits that the entirety of the parties' actual commitments are set forth in the hundreds of pages of the heavily-negotiated and highly-detailed agreements that followed.
On October 18, 2014, the parties signed a Master Transaction Agreement (MTA) which provided the framework for their relationship. Between July 2015 and March 2016, the parties entered into and amended several related agreements in connection with the MTA including the Technology Cooperation Agreement (TCA), the Foundry Supply Agreement (FSA), the Albany Cooperation Agreement (ACA), and the 10HP Statement of Work (10HPSOW) (together, the agreements).
Each agreement contained or was subject to a jury waiver provision. The MTA's version of the provision reads as follows:
"WAIVER OF JURY TRIAL. EACH PARTY HERETO HEREBY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY LEGAL PROCEEDING DIRECTLY OR INDIRECTLY ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS AGREEMENT OR ANY OF THE TRANSACTIONS, IN EACH CASE WHETHER NOW EXISTING OR HEREAFTER ARISING, [*2]AND WHETHER IN CONTRACT, TORT, EQUITY OR OTHERWISE."
The FSA and ACA contained nearly identical provisions. The FSA specifically incorporated "any [Statement of Work] hereunder" into its jury waiver provision, which includes the 10HPSOW. The TCA noted that "[e]ach party hereby waives any right to a jury trial."
According to IBM's complaint, by September 2015, just two months after the July 2015 closing of the transaction, GlobalFoundries began to indicate that it did not intend to develop, manufacture or supply the 10nm high performance chip contemplated by the agreements. By December 2015, GlobalFoundries notified IBM that it for certain did not intend to develop, manufacture or supply the 10nm chip and that it wanted to explore the possibility of amending the agreements to replace the 10nm chip promised with a more advanced 7nm chip. Still, IBM refused at that time to release GlobalFoundries from its contractual obligations.
In March 2016, the parties amended the TCA, FSA, and 10HPSOW. Notably, those amended agreements, signed after the dispute as to GlobalFoundries' commitment to the chips envisioned in the 2014 MTA began to emerge, still contained the broad jury waiver language noted above. Following the execution of the amended agreements in March 2016, GlobalFoundries continued to represent to IBM that instead of developing the 10nm chip, it would develop a 7nm technology that would satisfy IBM's technical specifications and needs. As alleged in the complaint, in September 2016 IBM notified GlobalFoundries by email that while it would cooperate with GlobalFoundries' development plans for a 7nm chip, it expressly reserved all of its rights under all the agreements, including but not limited to, its rights relating to the performance and development milestones under the TCA, the FSA, and the SOWs.
IBM paid GlobalFoundries the second ($500 million) and third ($250 million) monetary installments owed under the contracts in December 2016 and December 2017, respectively. By July 2018, GlobalFoundries had begun intimating to IBM that it might abandon development of the 7nm chip as well, and by August 2018 confirmed as much. Nonetheless, GlobalFoundries continued to develop, manufacture and supply the 14nm chip contemplated by the agreements to IBM.
On June 8, 2021, after receiving the last of the 14nm chips promised under the agreements from GlobalFoundries, IBM commenced this action alleging claims against GlobalFoundries for fraudulent inducement, breaches of the MTA, TCA, FSA, 10HPSOW and ACA, and promissory estoppel. After the close of discovery on July 6, 2023, IBM filed its note of issue containing a demand for a jury trial. GlobalFoundries moved to strike the jury demand in its entirety. Initially demanding a jury trial on all claims, IBM now suggests entitlement to a jury only on its fraudulent inducement and promissory estoppel claims. Supreme Court granted defendant's motion, and for the following reasons we affirm.
While the New [*3]York Constitution provides for a right of trial by jury (NY Const art 1, § 2), it is nevertheless well settled that jury waiver provisions are valid and enforceable (see Uribe v Merchants Bank of N.Y., 227 AD2d 141, 141 [1st Dept 1996]). "Freedom of contract prevails in an arm's length transaction between sophisticated parties" (Matter of Part 60 Put-Back Litig., 36 NY3d 342, 355 [2020] [internal quotation marks omitted]). The jury waivers to which these sophisticated parties agreed can only be described as very broad. The parties waived a jury "to the fullest extent permitted by applicable law" and not just for claims at law but for all claims "now existing or hereafter arising . . . whether in contract, tort, equity or otherwise." The parties were crystal clear in their intent that there would be no jury in "any legal proceeding directly or indirectly arising out of, under or in connection with this agreement or any of the transactions." As an initial matter, there is little debate that the contractual jury waivers here are broad enough by their terms to include IBM's fraud claim.
However, where a claim of fraudulent inducement challenges the validity of the agreement, a provision waiving the right to a jury trial in litigation arising out of the agreement may not apply (see e.g. China Dev. Indus. Bank v Morgan Stanley & Co. Inc., 86 AD3d 435, 436-437 [1st Dept 2011]; Wells Fargo Bank, N.A. v Stargate Films, Inc., 18 AD3d 264, 265 [1st Dept 2005][hereinafter Wells Fargo]). This Court has taken care to distinguish between actions where the primary claim is fraudulent inducement and the validity of the entire contract is clearly being challenged (see e.g. Ambac Assur. Corp. v Countrywide Home Loans Inc., 179 AD3d 518, 520-521 [1st Dept 2020] [hereinafter Countrywide]; Ambac Assur. Corp. v DLJ Mtge. Capital, Inc., 102 AD3d 487, 487-488 [1st Dept 2013] [hereinafter Ambac]; MBIA Ins. Corp. v Credit Suisse Sec. [USA], LLC, 102 AD3d 488 [1st Dept 2013] [hereinafter MBIA]), and actions that do not challenge the validity of the contract but rather seek to enforce the underlying contract by obtaining damages for fraudulent inducement (see e.g. Zohar CDO 2003-1 Ltd. v Xinhua Sports & Entertainment Ltd., 158 AD3d 594, 594-595 [1st Dept 2018]; Leav v Weitzner, 268 App Div 466, 468 [1st Dept 1944]). The present case falls into the latter category.
The brief discussion of jury waiver in the identical, and simultaneously decided decisions in Ambac and MBIA,specifically indicates that "[t]he complaint [in each case] alleges repeatedly that the . . . agreement was obtained through various types of fraud, making it clear that fraudulent inducement is plaintiff's primary claim" (Ambac at 487 and MBIA at 488 [emphasis added]). In each of these cases, and the singular other authority that they rely upon, Wells Fargo, theinvalidity of the contract at hand as a result of the fraud perpetrated was the central premise of the party's position. In Wells Fargo, a rent [*4]recovery action, this Court held that a jury waiver "does not apply to a sufficiently pleaded defense that amounts to a claim of fraudulent inducement challenging the validity of the agreement" (18 AD3d at 265 [emphasis added]). Where fraudulent inducement is asserted as a defense to a breach of contract action, New York courts have been quicker to infer an inherent challenge to the validity of the contract. Where a defense "challenges the validity of the writing wherein the jury waiver clause appears . . . the party resisting the contract should be afforded the privilege of a preliminary trial by jury on the defense of fraud" (Federal Housecraft v Faria, 28 Misc 2d 155, 156 [App Term, 2d Dept 1961], cited in Wells Fargo, 18 AD3d at 265; see also J.P. Morgan Sec. Inc. v Ader, 127 AD3d 506, 508 [1st Dept 2015][hereinafter Ader]; Bank of N.Y. v Cheng Yu Corp, 67 AD2d 961, 961 [2d Dept 1979] [in an action on a promissory note, jury waiver vitiated where defendant signed the guarantee but alleged he did not read or understand English and the contents of the agreement were misrepresented to him by the individual codefendant and a bank officer]).
Where fraudulent inducement is the plaintiff's primary claim, "[i]t is of no consequence that the complaint does not contain the word 'recission' or expressly state that it challenges the validity of the insurance agreement" if it is otherwise demonstrated that it is the party's intent (Ambac at 488; MBIA at 488). Both Ambac and MBIA involved numerous material misrepresentations allegedly made to insurers concerning the origination and quality of hundreds of millions of dollars of mortgage loans underlying the securitizations they insured. These misrepresentations were the central issue in both actions, and plaintiffs alleged breach of various representations and warranties only in the alternative to their fraudulent inducement claim. This Court determined that fraudulent inducement was plaintiffs' primary claim and the extent of the fraud pleaded in the complaints allowed plaintiffs' challenge to the validity of the insurance agreements to be inferred.[FN1] Countrywide (179 AD3d 518)involves the same factual scenario.
It is clear from IBM's complaint that its primary claim is not fraudulent inducement but rather breach of the agreements. While we have previously determined that IBM sufficiently states a cause of action for fraudulent inducement, separate and distinct from its claims of breach of contract for the purposes of pleading (see International Bus. Machs. Corp. v Global Foundries US Inc., 204 AD3d 441, 442 [1st Dept 2022]), its single allegation that GlobalFoundries gave a pre-contractual representation and assurance that it had made a long-term strategic and financial commitment to the development of high-performance chips when, "upon information and belief, GlobalFoundries had internal deliberations prior to the July 2015 closing about not proceeding with the development of the 10nm chip" is distinguishable [*5]from the multiple allegations of fraud in cases such as Ambac and MBIA.
When alleging fraudulent inducement, a party may "elect to either disaffirm the contract by a prompt recission or stand on the contract and thereafter maintain an action at law for damages attributable to the fraud" (Big Apple Car v City of New York, 204 AD2d 109, 110-111 [1st Dept 1994]). Here, IBM has chosen to affirm the agreements and maintain an action at law for compensatory and consequential damages
"on the theory that the defendant'[s] fraud resulted in a subsisting contract which, on account of the falsity of the representations, is detrimental to them. Under these circumstances, the plaintiffs are not in a position to contend, as they might perhaps contend in an action for recission, that the stipulation waiving a jury trial perished with all the other rights and obligations under the [agreement]" (Leav, 268 App Div at 468).
"While a party alleging fraudulent inducement that elects to bring an action for damages, as opposed to opting for recission, may, under certain circumstances, still challenge the validity of the underlying agreement in a way that renders the contractual jury waiver provision in that agreement inapplicable to the fraudulent inducement cause of action" (Zohar, 158 AD3d at 594; see also Ader, 127 AD3d at 507-508), that is simply not the situation present here. IBM has repeatedly elected to affirm or stand on the contract after it knew or should have known of GlobalFoundries' alleged fraud. In its complaint, IBM specifically alleges that "by September 2015, a mere two months after the closing, GlobalFoundries began to indicate that it did not intend to develop, manufacture or supply the 10nm High Performance chip" and that "[b]y December 2015, just five months after the closing, GlobalFoundries declared for certain that it would not develop, manufacture or supply the 10nm High Performance chip."
In IBM's own words, "[m]aking such a major shift in corporate priorities, and a major change in the allocation of billions of dollars in corporate resources, could not have happened entirely in the few months after the closing . . . It is not plausible that discussions and decision-making about such a material change in GlobalFoundries' strategic and technological direction only began for the first time after July 1, 2o15." Yet, IBM continued to perform under the agreements, and accept delivery of the 14nm chips, and in March 2016 agreed to amend the TCA, FSA, and both the 10HP SOW and the 14HPSOW. IBM's claim that what occurred in 2015 and 2016 gave it only notice of a breach but not notice of fraud on the part of GlobalFoundries, which was not revealed until on or about August 2018, is disingenuous. In this scenario, "[p]laintiff[] merely seek[s] to enforce the underlying agreements by obtaining damages for fraudulent inducement, rather than rescind the agreements, and do[es] not challenge the validity of the agreements in any manner other than by [*6]making factual allegations of fraud in the inducement" (Zohar, 158 AD3d at 595). In Ambac, MBIA, and Countrywide there was nothing to indicate that the plaintiffs elected to affirm the underlying contracts after discovering defendants' massive fraud.
IBM's promissory estoppel claim falls squarely within the broad jury waiver in the agreements, and thus that part of the note of issue seeking a jury trial on that claim was also properly stricken (see Bonnie-Lassie Sportswear, Inc. v Century Factors, Inc., 283 App Div 702, 703 [1st Dept 1954]).
IBM did not otherwise waive its right to a jury trial by joining equitable and legal claims. Its claim for an accounting was solely in aid of its breach of contract claim concerning permitted expenditures under the contract, and thus was not equitable (see Cadwalader Wickersham & Taft v Spinale, 177 AD2d 315, 316 [1st Dept 1991]).
IBM's previously dismissed unjust enrichment claim sought money damages, and these would have been sufficient to make it whole. As such, that claim was also not equitable (see Miller v Epstein, 293 AD2d 282, 282 [1st Dept 2002]).
Accordingly, the order of the Supreme Court, New York County (Joel M. Cohen, J.), entered May 14, 2024, which granted defendant's motion to strike the jury demand with regard to plaintiff IBM's claims for fraudulent inducement and promissory estoppel should be affirmed, without costs.
Order, Supreme Court, New York County (Joel M. Cohen, J.), entered May 14, 2024, affirmed, without costs.
Opinion by Kapnick, J. All concur.
Webber, J.P., Oing, Kapnick, Kennedy, JJ.
THIS CONSTITUTES THE DECISION AND ORDER
OF THE SUPREME COURT, APPELLATE DIVISION, FIRST DEPARTMENT.
ENTERED: December 19, 2024

Footnotes

Footnote 1: See e.g. MBIA Ins. Corp. v Countrywide Home Loans, Inc., 87 AD3d 287, 291-292 (1st Dept 2011) (discussing various types of fraud alleged in the complaint).